## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy L. Larkey, Sr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | May 16, 2017 <br><br> Court of Appeals Case No. 90A02-1612-CR-2767 <br><br> Appeal from the Wells Circuit Court <br><br> The Honorable Kenton W. Kiracofe, Judge <br><br> Trial Court Cause No. 90C01-1512-FC-4 |

**Bradford, Judge.**

# Case Summary

[1] Between March of 2013 and July of 2014, Appellant-Defendant Tim Larkey, Sr. ("Larkey") was living with his son Tim Larkey, Jr., his son's girlfriend Amanda G., and her four children in a house in Poneto, Indiana. On May 21, 2015, the children were removed from Amanda's care by the Department of Child Services ("DCS"). In September of 2015, D.G., one of Amanda's children, was referred to a counselor by DCS. During a counseling session that same month, D.G. disclosed to her counselor that Larkey had entered her bedroom and fondled her vagina sometime between March 2013 and July of 2014. The counselor reported the allegation to the Child Abuse Hotline and D.G. was interviewed by the Wells County DCS. On December 22, 2015, after the investigation by DCS and the police department, the Appellee-Plaintiff the State of Indiana ("the State") charged Larkey with Class C felony child molesting.

[2] On October 6 and 7, 2016, a jury trial was held. Larkey was found guilty as charged and the trial court sentenced Larkey to eight years of incarceration. Larkey contends that the State produced insufficient evidence to sustain his conviction of Class C felony child molesting and that the sentence is inappropriate in light of the nature of his offense and his character. Concluding that the evidence is sufficient and his sentence is not inappropriate, we affirm.

# Facts and Procedural History

[3] Between March of 2013 to July of 2014, Amanda and her four children lived in a home that had belonged to her grandmother in Poneto, Indiana. Amanda's boyfriend, Tim Larkey, Jr., and his father, Larkey, also lived in the house. The home had one bedroom downstairs, one bedroom upstairs, and an upstairs apartment. Amanda and Larkey, Jr. shared the downstairs bedroom, the children shared the upstairs bedroom, and Larkey, resided in the upstairs apartment. Larkey babysat the children from time to time and he had a good relationship with them; the children even referred to him as "Grandpa." Tr. Vol. II p. 59.

[4] All four children were removed from Amanda's care by the DCS on May 21, 2015. In September of 2015, D.G., one of Amanda's children, was referred to a counselor by DCS. During a counseling session on September 30, 2015, D.G. disclosed to the counselor that she had been sexually abused by Larkey. The counselor then made a report to the Child Abuse Hotline. D.G. was interviewed by Wendeline Garrett of the Wells County DCS on October 5, 2015. Garrett was familiar with D.G. and had known her since D.G. was removed from her mother's care in May of 2015.

[5] D.G. testified that while she was living in the house in Poneto, she woke up one night when she felt Larkey touching her inside of her underwear with his hand. D.G. testified that the contact was skin to skin. When D.G. woke up, she hit or kicked Larkey and the touching stopped. D.G. did not tell anyone about the incident until her counseling session in September of 2015 because she was scared.

[6] The Wells County Department of Child Services and the Bluffton police department investigated the allegation of molestation by Larkey. On December 22, 2015, the State charged Larkey with Class C felony child molesting. On October 6 and 7, 2016, a jury trial was held. The jury found Larkey guilty as charged and the trial court sentenced him to eight years of incarceration.

# Discussion and Decision

[7] Larkey raises the following restated issues: (1) whether the State presented sufficient evidence to sustain Larkey's conviction for Class C felony child molesting and (2) whether the trial court imposed an inappropriate sentence in light of the nature of Larkey's offense and character.

## I. Sufficiency of the Evidence

[8] Our standard for reviewing the sufficiency of the evidence claims is well-settled. *Tobar v. State*, 740 N.E.2d 109, 111 (Ind. 2000).

> In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the verdict. We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. Under our appellate system, those roles are reserved for the finder of fact. Instead, we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. This evidence need not overcome every reasonable hypothesis of innocence; it is sufficient so long as an inference may reasonably be drawn from it to support the verdict.

*Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012) (internal citations and quotation marks omitted). The trier of fact is responsible for resolving conflicts of testimony, determining the weight of the evidence, and evaluating the credibility of the witnesses. *Jones v. State*, 701 N.E.2d 863, 867 (Ind. Ct. App. 1998). Additionally, "[t]he uncorroborated testimony of the victim, even if the victim is a minor, is sufficient to sustain a conviction of child molesting, and it is within the province of the trier of fact to reject evidence to the contrary." *Feyka v. State*, 972 N.E.2d 387, 393 (Ind. Ct. App. 2012).

[9] That said, Larkey asserts that the only evidence to support his conviction, i.e. D.G.'s testimony, was uncorroborated and incredibly dubious. The incredible dubiosity rule, which requires the reversal of a conviction, is only applied in very narrow circumstances. *Leyva v. State*, 971 N.E.2d 699, 702 (Ind. Ct. App. 2012). The incredible dubiosity rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002).

[10] D.G. testified that Larkey entered her bedroom while she and her sisters were asleep and fondled her vagina, "skin on skin." Tr. Vol. II, pp. 82-83. D.G.

further testified that he only stopped once she woke up and hit or kicked him. D.G.'s testimony was not inherently contradictory or improbable, and there is no suggestion, much less evidence, of coercion. We, therefore, conclude that there was sufficient evidence for the jury to convict Larkey.

[11] Larkey suggests that D.G.'s testimony was contradictory because she said she was not absolutely sure that her molester was not Larkey, Jr. due to the passage of time since the incident; however, D.G. did later clarify that she was certain Larkey, Sr. was the perpetrator when she initially disclosed the molestation to her counselor. It was within the jury's province to evaluate D.G.'s credibility as a witness, and the jury chose to believe the victim.

## II.   Sentence Challenge

[12] Larkey also raises the issue of whether sentencing him to the maximum sentence allowed by law is appropriate in light of the nature of his offense and character. Under Indiana Appellate Rule 7(B), "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When reviewing such claims, we "concentrate less on comparing the facts of the [case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentence, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotes and citations omitted). Larkey, as the

defendant, bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[13] The sentencing range for a Class C felony conviction is between two and eight years of imprisonment, with the advisory sentence being four years of imprisonment. Ind. Code § 35-50-2-6(a). The advisory sentence is merely a starting point for the court when considering the appropriateness of a sentence. *See Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016). The trial court in this case sentenced Larkey to the maximum sentence of eight years.

[14] With respect to the nature of the offense, Larkey fondled the vagina of a ten-year-old girl in her bedroom while her sisters slept in the same room. He also had some position of trust with D.G. and her sisters; they oftentimes referred to him as "Grandpa." Tr. Vol. II, p. 166. The disturbing nature of Larkey's offense does not offer us any reason to modify his sentence.

[15] As for Larkey's character, at the age of fifty-six he has amassed a significant adult criminal history, including multiple felony convictions. Larkey also had several juvenile adjudications, one of which would have been a felony if he had been an adult. Larkey's lengthy criminal record and inability to reform himself shows his poor character and confirms the appropriateness of the sentence which was imposed by the trial court. Consequently, we do not agree with Larkey's argument that in light of the nature of his offense and his character, his sentence is inappropriate.

[16] We affirm the judgment of the trial court.

Najam, J., and Riley, J., concur.